Chandler v. Chandler.

No. 18,831.

ALICE GOLDIE CHANDLER, *Appellant*, v. LEVI L. CHANDLER, *Appellee.*

### SYLLABUS BY THE COURT.

1. JUDGE PRO TEM.—*Selected by Parties—No Oath Administered—Decree Valid.* A judge from another district was by the parties agreed upon as judge *pro tem.* to try the case, and proceeded to hear and determine the same, being fully recognized as judge *pro tem.* No oath was taken, and it does not appear that the regular judge was absent or disqualified. *Held*, that such agreement by the parties was a proper and legal method of selecting a judge *pro tem.*, and the decree rendered by him was valid.

2. SAME—*Statutory Provision for Judge Pro Tem. by Agreement Valid.* The requirements of the constitution (art. 3, § 20) that provision be made by law for the selection by the bar of a *pro tem.* judge when the regular judge is absent or disqualified does not preclude the legislature from providing other methods of selection.

3. MOTION FOR NEW TRIAL—*Expiration of Term of Trial Judge.* In cases occurring before chapter 243 of the Laws of 1913 took effect a motion for new trial need not necessarily be granted by a judge who has succeeded the one who tried the case unless such motion involves the examination and weighing of evidence and the credibility of witnesses.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed May 9, 1914. Affirmed.

*Carr W. Taylor,* of Hutchinson, and *Thomas H. Grisham,* of Cottonwood Falls, for the appellant.

*Joseph G. Waters,* and *John C. Waters,* both of Topeka, for the appellee.

The opinion of the court was delivered by

WEST, J.: On December 3, 1913, the parties by their counsel stipulated in writing that Honorable Robert C. Heizer, judge of the thirty-fifth judicial district, who had appeared on request of the parties, should try the cause as judge *pro tem.* and render judgment any day of the term the clerk desired. The journal entry recited that the cause came on for hearing and trial before Judge Heizer, as judge *pro tem.*, by written consent and agreement of the parties, and continued in progress until the 5th of December; that both parties appeared in person and by their attorneys, and introduced their respective evidence, and rested. It was decreed that the parties be denied a divorce and the plaintiff be given alimony, and provision was made for the custody of the children. This journal entry was approved by the attorneys for both parties. Within three days a motion for new trial was filed. Long afterwards a verified amended motion to vacate and set aside the judgment was filed, setting up that Judge Meckel of the Chase district court was not disqualified, sick or absent; that Judge Heizer had no jurisdiction to try any cause outside of his own judicial district; that he was not chosen judge *pro tem.* by the bar of Chase

county and did not take the oath of office; that he was not a judge *pro tem.* acting in the place of Judge Meckel, but merely tried the cause by virtue of an agreement of the parties; that the term of Judge Meckel expired January 13, 1913, and that therefore his successor, Judge Harris, should set aside the judgment and grant a new trial. On June 3, 1913, this motion was denied, the journal entry reciting that the judgment and decree "was rendered and entered by the agreement and consent of all the parties thereto." On February 27 a statement was filed by certain of the counsel that the attached stipulation had been misplaced by oversight, which stipulation recited that the trial might be had before Judge Heizer, and no party should raise any question caused by the expiration of the term of Judge Meckel.

The sole question presented by the appeal is the validity of the decree rendered by Judge Heizer, the plaintiff contending that it is utterly void for want of jurisdiction. Counsel asserts with vigor and confidence that mere consent can not confer jurisdiction of the subject matter, and in this he is correct. He urges that this is a direct attack on the judgment which can be made by appeal, and he is correct in this also. (*Higby v. Ayres and Martin,* 14 Kan. 331, 338; *Earls v. Earls,* 27 Kan. 538; *Shaffer, Adm'r, v. Brinkman,* 31 Kan. 124; *A. T. & S. F. Rld. Co. v. Keller,* 31 Kan. 439, 2 Pac. 771; *Fleeman v. Railway Co.,* 82 Kan. 574, 109 Pac. 287; *Nason v. Patten,* 88 Kan. 472, 474, 129 Pac. 138.) It is argued, further, that as the constitution requires that provision be made by law for the selection by the bar of a *pro tem.* judge when the judge is absent or otherwise disqualified to sit (Const. art. 3, § 20) the legislature went beyond its power in providing (Gen. Stat. 1909, § 2395) that the parties, or their attorneys, in any case may select a judge to sit in such case. But we are not ready to concede that this constitutional requirement precludes other methods of se-

lecting a judge *pro tem.* A very similar question was up in *The State v. Durein,* 70 Kan. 13, 80 Pac. 987, and in *The State v. Weiss,* 84 Kan. 165, 113 Pac. 388, wherein it was held that the prohibition of the manufacture and sale of intoxicating liquor for all but the excepted purposes was no bar to complete legislative prohibition. *In re Norton,* 64 Kan. 842, 68 Pac. 639, is cited, but that case decided that a court. to be legal must be created either by the constitution or by an act of the legislature. The language of the statute is peculiar, "A judge *pro tem.* of the district court may be selected in the following cases." ('Gen. Stat. 1909, § 2394.) "Such selection shall be made by the members of the bar present. . . . The parties, or their attorneys, in any case may select a judge to sit in such case." (§ 2395.) Here the word "cases" seems to mean occasions and not lawsuits, and it is significant that the word "selection" and not "election" is used in the statute and in the constitution. The exact question was considered in *Kansas Pacific Rly. Co. v. Reynolds,* 8 Kan. 623, and it was there said:

"Now this constitutional provision can affect this question only for one of two reasons, either because it restricts the power of the legislature to dispose of a case pending in a court whose judge is disqualified to try it, or because in such a case it guarantees to a party litigant a trial in the same court before a judge *pro tem.* It is not in terms a denial of power. It does not purport to withhold or limit. Nor is it couched in the form of a grant. The act required is an act of legislative power. It would pass to the legislature under the general grant. Without it, unless restrained by some other clause of the constitution, the legislature could do just what it has done, and what it is authorized to do under this section. If, therefore, it neither grants power otherwise reserved, nor restricts power otherwise granted, why was it incorporated into the constitution, and what function does it perform? It is directory in its nature. It calls the attention of the legislature to a particular subject, and imposes a duty in that respect. It emphasizes the will of the people in

reference to certain legislation; and, being such, we know no reason for construing an imposition of duty as a restriction of power." (p. 630.)

In *Davis v. Wilson*, 11 Kan. 74, it was held that when the regular judge had left before all the cases for trial had been reached and a judge *pro tem.* had been elected to dispose of the remaining cases, and he had been of counsel and could not sit in one of them, it was proper to elect another judge *pro tem. for that case*, "the parties not being able to agree," the necessary inference being that a selection by their agreement would have been sufficient. In *City of Wellington v. Wellington Township*, 46 Kan. 213, 26 Pac. 415, the record recited that the trial was submitted to a judge *pro tem.* by and with the consent of all the parties, and it was said: "Now, this is one of the modes prescribed by statute for the selection of a *pro tem.* judge." (p. 217.) Chapter 155 of the Laws of 1911, amending section 2398 of the General Statutes of 1909, provides that the judge *pro tem.* shall have the same power and authority as the regular judge "in respect to cases tried before him, or in which he may have been selected to act," and that there shall be filed with the clerk a certificate of the regular judge that he is physically incapacitated from holding the term, and the judge selected for the term shall receive a certain per diem, "but no such certificate shall be required where a judge *pro tem.* is selected to try or hear any particular case or proceeding." This indicates a legislative distinction between a regular selection for the purpose of holding out the term and a choice of one to try a given case, and we think that such distinction marks all the legislation on the subject and accords with practical experience and necessity. In *Higby v. Ayres and Martin*, 14 Kan. 331, the regular judge was engaged in the trial of a cause, and there being no statutory disqualification to prevent his trying the case in question the parties consented to its trial before another as judge *pro tem.* It

was argued there as here that consent could not confer jurisdiction, but the court said that the authority of the judge *pro tem.* had been duly recognized by the parties to the cause and by the officers of the court and it was held that he was a *pro tem.* judge *de facto* and his acts binding and could not be attacked in this court for the first time. It was held by Brewer, J., in the case of *In re Watson, Petitioner,* 30 Kan. 753, 1 Pac. 775, that although the opinion and announcement of the decision were made outside the district by one who was no longer judge, yet as the parties had voluntarily proceeded to a hearing before him and accepted his decision as the action of the court, such acceptance was equivalent to a recognition of him as a judge *pro tem.* and precluded them from questioning his decision on the ground that he had not been selected and sworn as such. In *Railway Co. v. Preston,* 63 Kan. 819, 66 Pac. 1050, it appeared that the regular judge was disqualified and the judge of another district was called upon to try the cause, and was duly elected by the bar and presided at the trial with the acquiescence of the parties and officers whose authority could not be questioned in this court for the first time. It was held to be a question of recognition rather than one of jurisdiction conferred by consent. The case is in point in respect to the claim here made that Judge Heizer could not sit outside his own district. The failure to take the oath did not avoid his acts. (*In re Hewes,* 61 Kan. 288, 62 Pac. 673.)

From a consideration of the constitutional and statutory provisions, together with the foregoing decisions and the practical necessities often arising in similar cases, we conclude and hold that the selection made by the agreement of the parties was a valid statutory method of choosing a *pro tem.* judge to try the case, and such selection being followed by full recognition and acquiescence until long after the decision was ren-

Chandler v. Chandler.

dered the power of Judge Heizer to sit was and is beyond question.

But it is contended that as Judge Meckel's term expired long before the motion to vacate was filed, Judge Heizer's powers, if any, had ceased with the expiration of the term and it became the duty of Judge Meckel's successor to grant the motion, and *Bass v. Swingley,* 42 Kan. 729, 22 Pac. 714, and *Insurance Co. v. Neff,* 43 Kan. 457, 23 Pac. 606, are cited. Counsel for plaintiff regards the motion as one to set aside the judgment and also to grant a new trial, and calls attention to the language in the journal entry that the court did "deny and overrule each of said motions." But if we are to assume that such was the intent and effect of the court's order it does not follow that it was incumbent upon Judge Harris to grant a motion for new trial. In *Bass v. Swingley* the point decided was that when the motion is based on the ground that the verdict is not sustained by sufficient evidence it is the duty of the new judge to grant the motion because he could not know what the evidence was. In the Neff case a new trial was granted, and this was affirmed and the Swingley case referred to, but what was really involved in the motion does not clearly appear. In *Linker v. Railroad Co.,* 87 Kan. 186, 123 Pac. 745, the matter is placed on the ground stated in *Bass v. Swingley.* The point presented by the verified amended motion was the invalidity of the judgment arising out of the alleged lack of jurisdiction in Judge Heizer, and this involved no examination or weighing of evidence in the ordinary sense, or the credibility of witnesses, and one judge could act as well as another. The last legislature provided that the motion shall not be granted, for the reason of the change in judges, when the evidence is available so that the new judge has the facts before him (Laws 1913, ch. 243), and this, though not applicable here, indicates a purpose in line with the decision in the Swingley case.

The only question sought to be raised by the appeal, as stated by counsel for the plaintiff, is the validity of the decree, and hence we need not discuss or determine the point suggested as to the effect upon the power of Judge Heizer the expiration of Judge Meckel's term had.

For the reasons already indicated we must regard the decree as valid and binding, and the order refusing to set aside is therefore affirmed.